NO. 3083

Under Senate Bill No. 89, Acts of
Regular Session, Forty-sixth Legislature,
reimbursing certain designated counties
in East Texas in such amounts as their
county tax revenues are impaired by rea-
son of the purchase or lease by the Fed-
eral Government of cut-over timberlands
therein, such counties will be entitled
to participate in and receive the bene-
fits of such grant or reimbursement dur-
ing the year 1939 from state ad valorem
taxes currently collected in said coun-
ties, and will not, under the terms of
the Act, be required to wait until 1940,
or subsequent years, to receive such re-
imbursement.

OFFICE OF ATTORNEY GENERAL

November 9, 1939

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:                    Opinion No. O-1265
                             Re: During the current tax year,
                             will the counties designated
                             in Section 1 of Senate Bill
                             No. 89, Acts of Regular Ses-
                             sion, Forty-sixth Legislature,
                             participate in the grant or
                             donation of State ad valorem
                             taxes allowed by such statute.

By your letter of August 10, 1939, you submit for
the opinion of this department the following question, which
we copy from your letter, together with supporting facts:

"I will thank you to refer to Sen-
ate Bill No. 89, Acts of the Regular
Session of the Forty-sixth Legislature,
and advise when the counties listed
therein may participate under the pro-
vision of this bill.  You will notice
that Section 1 begins, as follows:

"'That from and after the effective
date of this Act, the Assessor and Col-
lector of Taxes . . . ' shall do certain
things.

"You will notice in Section 2, that,

vided in Section 1 of this Act,' . . . 'the Commissioners' Court of each County above named shall at their regular annual meeting as a Board of Equalization in May of each year' . . . do certain things.

"This bill was approved May 15, 1939, and became effective ninety days after approval.

"Will the counties effected by this bill participate in the taxes paid during this year?

"Our taxpaying year, of course, begins October 1. Will these counties participate in delinquent taxes that are now being paid, provided they have met all requirements of the Act?"

Senate Bill No. 89, Acts of Regular Session, Forty-sixth Legislature, is an Act granting aid to certain named counties by way of a grant or donation to such counties of such amounts of the state ad valorem taxes as such counties have lost in county ad valorem taxes by reason of the purchase by the Federal Government of large acreages, thereby reducing the taxable value of such counties. The first four sections of the Act under consideration set up the procedure to be followed by the state and county tax officials in determining the amount of this aid or donation. Section 1 provides that the Assessor and Collector of Taxes for the counties to benefit by this reimbursement for impaired county revenues, shall ascertain the number of acres of land purchased or leased by the Federal Government in their respective counties, and shall make a report under oath to the Commissioners' Court of such county as to such facts.

Section 2 of this Act provides that upon the filing of said report, the Commissioners' Court of each county named, sitting as a Board of Equalization, shall fix a proper valuation upon such land and determine therefrom the amount of taxes that have been lost as a result of such purchases or leases of land in the county by the Federal Government.

Section 3 of this Act provides that the Assessor and Collector of Taxes for the various counties involved, shall make an itemized report under oath, showing the valuation fixed by the Board of Equalization on such land and the amount of county ad valorem taxes that would accrue thereon were they not exempt by reason of purchase or lease by the Federal Government, and shall forward said report to the Comptroller of Public Accounts at Austin, Texas.

Under Section 4, this last named official is directed to check this report as to the correctness thereof, and to approve such report if found correct. And it is the total amount of county ad valorem taxes, which would have been assessed against the land owned or leased by the Federal Government except for its immunity from state taxation, which is granted or donated to these counties out of State ad valorem taxes.

A consideration of the statutory steps above outlined for effecting a reimbursement to the counties named

in the Act of lost or impaired county revenues, impels us to the conclusion that the Commissioners' Court of the various counties, in discharging the duties placed upon them by Section 2 of the Act, are acting in a role of function entirely independent of and in addition to their duty to annually equalize tax values of the county upon rendition lists presented to them by tax assessors-collectors. This latter function is for the preparation of the tax rolls and the ultimate collection of taxes from the various land owners of the county. On the other hand, the statutory duties fixed by Section 2 of the Act under consideration involves, not a valuation for the purpose of collecting taxes, but rather a valuation for the purposes of determining the amount of taxes which cannot be collected by virtue of the Federal immunity accorded certain lands in the county, so that a proper figure may be arrived at to guide the Comptroller of Public Accounts in granting or donating part of State ad valorem taxes to such counties. Therefore, we say that existing statutes governing the sittings of the Commissioners' Court, as a Board of Equalization for the first purpose, are not controlling, and the opinions of this department under such statutes, to the effect that a Commissioners' Court, having finally approved tax rolls and adjourned, cannot again meet for the purpose of reviewing its action, are not determinative of the question submitted.

Senate Bill No. 89, Acts of Regular Session, Forty-sixth Legislature, is new and independent legislation, and in answering your question we are limited to the terms of the statute, assisted by recognized rules of statutory construction. One of such rules is that all parts of a statute must be so construed as to give reasonable and harmonious effect to the whole statute. To single out the language of Section 2 of the Act, pointed out in your letter, to the effect that "the Commissioners' Court of each county above named shall, at their regular annual meeting as a Board of Equalization in May of each year, fix a valuation upon such land", and say therefrom that such Commissioners' Court, acting as a Board of Equalization, could not take such action except in the month of May of the current tax year, would set at naught the other provisions of the Act and defeat the plain purpose of the Legislature to extend present aid to distressed counties.

In this connection, Section 1 of the Act provides "that from and after the effective date of this Act", the Assessor and Collector of Taxes for the counties affected shall make a certain report under oath to the Commissioners' Court as to the number of acres of land purchased or leased by the Federal Government in such counties. This contemplates that the initial step under the statute for securing reimbursement to the counties affected, should be taken forthwith.

Moreover, Section 5 of the Act makes a present rather than a prospective or future donation or grant of State ad valorem taxes to the counties named, in the following language:

"There is hereby donated, and granted to each of the counties of Jasper, Sabine, etc., all of the State ad valorem taxes necessary to reimburse said county for the loss sustained by said county or counties. . ."

To further evidence the legislative intent that immediate assistance be given to the counties named, we quote, in part, from the emergency clause, as follows:

"The fact that the United States Government has purchased or leased a large acreage of cut over land in the counties named in Section 1 hereof, thereby taking off of the tax rolls great valuations for taxable purposes in each of such counties; and the fact that the loss of such taxable values in such counties renders them incapable of carrying on county government and paying the expenses incident thereto . . . creates an emergency, . . . "

Considering this Act from its four corners, and with a view to giving harmonious effect to all its parts, and to effectuate the intent of the Legislature to afford immediate relief to counties with depleted tax revenues, we are constrained to hold that the designated counties, upon complying with the requirements of the Act, are entitled to participate in the grants or donations of State ad valorem taxes provided by the Act, during the present tax year of 1939. To give a literal interpretation to the language of Section 2, providing that the Commissioners' Court shall, at its regular annual meeting "in May of each year", fix a valuation upon the land owned by the Federal Government, would necessarily defer such action until May, 1940, and we think this is a result not intended by the Legislature or required by the statute under consideration.

We think the language "at their regular annual meeting as a Board of Equalization in May of each year" is merely descriptive of the capacity in which the Commissioners' Court should act in fixing this valuation and was not intended to fix a definite statutory date for such action. The Commissioners' Court, sitting as a Board of Equalization, under statute, begins its work of equalizing assessments in May of each year, and the court is so described in Section 2 of the Act involved. But there is nothing to prevent such court from continuing its meetings as long as may be necessary to accomplish its work; and it may do so in the present case.

But even conceding that Section 2 of the Act under consideration here requires the Commissioners' Court of each county, sitting as a Board of Equalization, to fix the necessary valuations at their regular annual meeting in May of each year, we think that, under established rules of statutory construction, such requirement is directory rather than mandatory. The rule which we here invoke is well stated by Mr. Sutherland in his work on Statutory Construction (2nd Edition), Section 612, page 1117, as follows:

"Provisions regulating the duties of public officers and specifying the time for their performance are in that regard generally directory. Though a statute directs a thing to be done at a particular time, it does not necessarily follow that it may not be done afterwards. In other words, as the cases universally hold, a statute specifying a time within which a public officer is to perform an official act regarding the rights and duties of others

is directory, unless the nature of the
act to be performed, or the phraseology
of the statute is such that the designa-
tion of time must be considered as a
limitation of the power of the officer."

Again this same author observes, in Section 611,
page 114:

"Those directions which are not of
the essence of the thing to be done,
but which are given with a view merely
to the proper, orderly and prompt con-
duct of the business, and by the fail-
ure to obey the rights of those inter-
ested will not be prejudiced, are not
commonly to be regarded as mandatory;
and if the act is performed, but not
in the time or in the precise mode in-
dicated, it will still be sufficient,
if that which is done accomplishes the
substantial purpose of the statute."

This canon of statutory construction is illus-
trated by the case of Graham vs. Lasater, 26 S.W. 472, hold-
ing that under Sayles Civil Statutes, Article 1517a, Subdi-
vision 1, providing that the County Commissioners' Court
shall convene and sit as a Board of Equalization on the sec-
ond Monday in June, or "as soon thereafter practicable be-
fore the first day of July", does not render a continuation
of their proceedings into July a nullity. Although the date
for the convening of the Commissioners' Court, sitting as a
Board of Equalization, has been changed, under existing
statutes, to May of each year, this declaration of the law
is not thereby changed, and we think the counties benefit-
ed by Senate Bill No. 89, Acts of Regular Session, Forty-
sixth Legislature, may, through their respective Commis-
sioners' Courts, sitting as Boards of Equalization, do and
perform the things required by Section 2 of the Act, there-
by becoming entitled, during the current year, to the grants
and donations contemplated thereby.

We now pass to the other question presented by
your letter; that is, whether or not the grant or reimburse-
ment for depleted tax revenues, which we have held these
counties are entitled to receive during the current year,
will be paid from current tax receipts of the State for the
year 1939, and succeeding years, or from receipts of delin-
quent State ad valorem taxes.

In our opinion, Senate Bill No. 89, Acts of Regu-
lar Session, Forty-sixth Legislature, undoubtedly contem-
plates that the grant, donation or reimbursement to the af-
fected counties should be made or paid from current State
tax collections rather than from delinquent collections.
The Act under consideration neither expressly nor inferen-
tially directs or allows a resort, for that purpose, to de-
linquent State ad valorem taxes, which are being continu-
ously collected and paid; but on the contrary, the entire
Act, and more particularly Section 5 thereof, indicates
that the donation or reimbursement shall be made on a year
to year basis from State ad valorem taxes levied and col-
lected during any given year.

Finally, we point out that it is not our purpose
hereby to express any opinion upon the constitutionality
of the Act under consideration, and this opinion should not

be construed as doing so.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Pat M. Neff, Jr.

Assistant

PMN:N

   This opinion has been considered in conference, approved, and ordered recorded.

Gerald C. Mann
Attorney General of Texas